## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IVAN CROSSLAND, JR., an individual, )<br><br>      Plaintiff/Counter Defendant, )<br><br>vs. )<br><br>OPPENHEIMER MULTIFAMILY )<br>HOUSING & HEALTHCARE FINANCE, )<br>INC., a Pennsylvania corporation, )<br><br>      Defendant/Third-Party Plaintiff/ )<br>      Counter Claimant, )<br><br>vs. )<br><br>PETE PATRICK MARRONE, )<br>an individual, )<br><br>      Third-Party Defendant. )| Case No. CIV-16-1218-M |

### ORDER

This case is scheduled for trial on the Court's September 2018 trial docket.

Before the Court is defendant/third-party plaintiff Oppenheimer Multifamily Housing & Healthcare Finance, Inc.'s ("Oppenheimer") Motion for Summary Judgment, filed January 2, 2018. On February 6, 2018, plaintiff Ivan Crossland, Jr. ("Crossland") filed his Counter-Motion for Summary Judgment and Response in Opposition to Oppenheimer's Motion for Summary Judgment. On March 9, 2018, Oppenheimer filed its response to Crossland's Counter-Motion for Summary Judgment and reply in support of its Motion for Summary Judgment, and on March 30, 2018, Crossland filed its reply. Based upon the parties' submissions, the Court makes its determination.

## I.    Introduction

Crossland and third-party defendant Pete Patrick Marrone ("Marrone") formed Wesley Village, LP, to carry out the rehabilitation of a retirement community apartment complex in Oklahoma City. On or around November 18, 2013, Oppenheimer conditionally agreed to make a mortgage loan to Wesley Village, LP, in the principal amount of $4,950,000 for the rehabilitation of an apartment complex known as Wesley Village Retirement Community (the "Project"). Oppenheimer's loan was to be evidenced by, among other things, a Mortgage Note (the "Note"). The Note was secured by, among other things, a deed of trust on the Project and was insured by the United States Department of Housing and Urban Development ("HUD").

Oppenheimer's Financial Commitment Letter for the Project required that HUD's initial endorsement on the Note take place on or before December 18, 2013. The Financial Commitment Letter further provided that HUD's final endorsement must "occur on or before the 15th day of the 20th month following the month in which occurs the earlier of (a) approval of an Early Start or (b) Initial Endorsement." Financial Commitment Letter, attached as Exhibit 1 to Oppenheimer's Motion for Summary Judgment and Brief in Support [docket no. 21], at 4. Additionally, the Financial Commitment Letter provided:

> Monthly Final Endorsement Extension Fee: One-eighth of one percent of the Insured Mortgage Amount per month (or any portion thereof) for each of the first three monthly extensions and then one-quarter of one percent for each month thereafter following the above-defined Required Final Endorsement Date until Final Endorsement occurs.
>
> Borrower is responsible for payment of all Initial Endorsement Extension fees and Final Endorsement Extension fee and acknowledges that such fees will not be affected by any extensions that FHA may grant in such dates or in the date for completion of the Project. All extension fees are non-refundable. It is expressly understood and agreed that extension fees retained by the Lender shall not constitute liquidated damages and the Borrower shall be

additionally and fully liable for all actual damages sustained by the Lender.

Because the Insured Mortgage Amount does not include funds for extension fees and Surplus Cash may not be available for their payment, Final Endorsement Extension fees shall be guaranteed by Ivan Crossland and Pete Marrone, personally in a form acceptable to [Oppenheimer].

*Id.*

HUD provided its initial endorsement on the Note on February 13, 2014.[1] On that same day, Oppenheimer, Crossland, and Marrone entered into an Extension Discount Agreement. Under the Extension Discount Agreement,

[Crossland and Marrone] have agreed that, in the event that Final Endorsement for Mortgage Insurance of the Note for the Project by HUD (hereinafter referred to as "Final Endorsement") does not occur on or before the Required Final Endorsement Date, which is defined as the 15th day of the 20th month following the month in which occurs the earlier of (a) approval of an Early Start or (b) Initial Endorsement (which date will not be affected by any extension by FHA of the required completion date), then [Crossland and Marrone] shall be obligated to pay and shall pay to [Oppenheimer], on or before the first day of the month in which such extension period commences, a monthly extension discount equal to one-eighth of one percent of the Insured Mortgage Amount per month (or any portion thereof) for each of the first three monthly extensions and then one-quarter of one percent for each month thereafter following the above-defined Required Final Endorsement Date until Final Endorsement occurs. [Crossland and Marrone] shall pay each such monthly extension discount in advance of the first day of the month in which such extension period commences.

Extension Discount Agreement, attached as Exhibit 3 to Oppenheimer's Motion for Summary Judgment and Brief in Support, at 1-2. As of March 25, 2015, construction on the Project was complete. HUD provided its final endorsement on the Note on October 5, 2016.

---

[1] Based upon the date of the initial endorsement, the Final Endorsement Date was October 15, 2015.

Wesley Village, LP made all principal and interest payments on the Note between October 15, 2015 and October 5, 2016, paying Oppenheimer $247,882.90 in interest and $40,225.75 in principal on the Note. Further, between October 15, 2015 and October 5, 2016, a total of $134,130.45 in extension fees were incurred. Neither Wesley Village, LP, Crossland, nor Marrone have paid the extension fees.

On October 20, 2016, Crossland filed the instant action seeking declaratory relief determining the following: (1) Oppenheimer breached the Building Loan Agreement and the Extension Discount Agreement by unreasonably delaying the submission to HUD seeking final endorsement of the Note; (2) delay in obtaining HUD's final endorsement of the Note is due to the actions and omissions of Oppenheimer; (3) Oppenheimer breached the covenant of good faith and fair dealing which is implied in every Oklahoma contract; (4) the extension fees under the Extension Discount Agreement is an unconscionable and unenforceable penalty under Oklahoma law; and (5) Crossland has no liability to Oppenheimer for the extension fees. Complaint [docket no. 1] at 3-4. On December 13, 2016, Oppenheimer filed a counterclaim against Crossland for breach of contract and filed a third party complaint against Marrone for breach of contract based upon Crossland's and Marrone's failure to pay the extension fees. Both Crossland and Oppenheimer have moved for summary judgment on their claims.

II.     Discussion

Crossland asserts, in part, that the extension fees are improper penalties which are void under Oklahoma law. Oppenheimer contends that the subject extension fees are entirely valid and enforceable obligations under settled Oklahoma law. Specifically, Oppenheimer contends that because the extension fees are valuable consideration designed to compensate it for the risks and

expenses[2] of carrying the loan at issue well beyond the stipulated final endorsement deadline, the extension fees are not penalties.

"Except as expressly provided in Section 215 of this title, penalties imposed by contract for any nonperformance thereof, are void." Okla. Stat. tit. 15, § 213. Further, Section 215 provides, in pertinent part:

> A stipulation or condition in a contract except a contract to purchase and sell real property, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

Okla. Stat. tit. 15, § 215(A). Further, if the provision "constitutes a penalty, the provision will be deemed void even if the damage resulting from a breach would be difficult to ascertain." *Yale 41 Assocs. Ltd. P'ship*, 16 F. App'x 921, 922 (10th Cir. 2001) (internal citations omitted). Additionally,

> [w]hether the . . . provision imposed a penalty, or provided for liquidated damages, is to be determined from the language and subject matter of the contract, the evidence intent of the parties and all the facts and circumstances under which the contract was made. The most important facts to be considered are whether the damages were difficult to ascertain, and whether the stipulated amount is a reasonable estimate of probable damages or is reasonably proportionate to the actual damage sustained at the time of the breach.

*Waggoner v. Johnston*, 408 P.2d 761, 769 (Okla. 1965) (internal citations omitted). Finally, the burden of demonstrating that damages would be difficult to ascertain and that the provision does

---

[2] Oppenheimer asserts that these risks and expenses include extension fees that it, as lender, has to pay to third party investors if a permanent loan certificate is not delivered by a certain date. Oppenheimer asserts that it cannot deliver a permanent loan certificate on projects of this nature without HUD's final endorsement. Oppenheimer, thus, concludes that the extension fees are designed to compensate it for direct expenses it incurs in the event of a delayed final endorsement by HUD.

not impose a penalty rests on the party seeking to enforce the provision. *See Yale 41*, 16 F. App'x at 922.

Having carefully reviewed the parties' submissions, including the Financial Commitment Letter and the Extension Discount Agreement, the Court finds that the extension fees are penalties which are void under Oklahoma law. First, the Court finds that the extension fees are not for liquidated damages that are difficult to ascertain. The Financial Commitment Letter specifically states that the extension fees "shall not constitute liquidated damages". Financial Commitment Letter at 4. Additionally, in its submissions, Oppenheimer asserts that the extension fees are not liquidated damages. Oppenheimer does assert, though, that the extension fees are designed to compensate it for the expenses of carrying the loan beyond the final endorsement deadline, which appears to be the same as liquidated damages. Oppenheimer further states that these expenses include extension fees that it has to pay to third party investors if a permanent loan certificate is not delivered by a certain date. The Court, thus, finds these expenses clearly are not difficult to ascertain.

Second, the Court finds that the extension fees are not additional consideration. Neither the Financial Commitment Letter nor the Extension Discount Agreement provide that such extension fees are consideration designed to compensate Oppenheimer for the risks and expenses of carrying the loan at issue well beyond the stipulated final endorsement deadline. In fact, the Extension Discount Agreement provides that the agreement is for the purpose of inducing Oppenheimer to make the mortgage loan not to compensate Oppenheimer for the risks and expenses of carrying the loan beyond the final endorsement deadline. *See* Extension Discount Agreement at 1.

Third, considering all of the circumstances involved in the instant case, the Court finds that the extension fees are penalties. Oppenheimer has not shown that the amount of the extension fees is any reasonable estimate of the expenses it would incur from carrying the loan beyond the final endorsement deadline. Additionally, Wesley Village, LP continued to make principal and interest payments on the Note beyond the final endorsement deadline. Further, any risk in this case would appear to be minimal as the construction portion of the Project had already been completed and HUD had already accepted the construction. Upon review of the evidence and the parties' submissions, the Court finds the only reasonable conclusion is that the extension fees were meant to be a penalty for failing to have HUD's final endorsement by the deadline. In fact, Oppenheimer's employee stated just that: "As you can see, there are many items requiring your attention and it is imperative to provide timely submittal to HUD in order to avoid extension penalties (as discussed above)." February 12, 2015 letter from Lisa Ann Long, Construction Loan Administrator for Oppenheimer to Marrone, attached as Exhibit 6 to Crossland's Counter-Motion for Summary Judgment and Response in Opposition to Oppenheimer's Motion for Summary Judgment.

Accordingly, because this Court has found that the extension fees are penalties, the Court finds that these extension fees are void under Okla. Stat. tit. 15, § 213.[3] The Court, therefore, finds that Crossland is entitled to summary judgment against Oppenheimer. Additionally, the Court finds that Marrone would also be entitled to judgment against Oppenheimer.

---

[3] Because the Court has found that the extension fees are void, the Court finds that it need not address the other arguments raised in the parties' motions for summary judgment.

III.     <u>Conclusion</u>

For the reasons set forth above, the Court DENIES Oppenheimer's Motion for Summary Judgment [docket no. 21] and GRANTS Crossland's Counter-Motion for Summary Judgment [docket no. 30].

**IT IS SO ORDERED this 28th day of June, 2018.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE